UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| THOMAS JAMES | NO. 15-00138-BAJ-RLB-3 |

## RULING AND ORDER

In December 2017, Thomas James pleaded guilty to one count of conspiracy, one count of unauthorized access device fraud, and one count of aggravated identity theft, each related to a counterfeiting scheme that resulted in losses nearing $950,000. For his participation in the scheme, James was sentenced to a below-guidelines sentence of 88 months imprisonment. The U.S. Court of Appeals for the Fifth Circuit affirmed James's convictions and sentence, and the U.S. Supreme Court denied review.

Now James seeks to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255, asserting that he is "factually innocent," that his plea was not voluntary, and that his court-appointed counsel was ineffective prior to his plea, and on appeal. (Doc. 340, Doc. 340-1). The Government opposes James's petition. (Doc. 342). For reasons below, James's petition will be denied.

## I. BACKGROUND

At approximately 9:30 p.m. on September 2, 2014, James (the petitioner here), Walter Glenn, and Larry Walker were driving eastbound on Interstate 10 through Baton Rouge, Louisiana in a rented Chrysler 300 when they were stopped by

Sergeant Donald Dawsey, an officer assigned to the West Baton Rouge Parish Sheriff's Office narcotics patrol unit. (Doc. 130 at pp. 1-2). As set forth in this Court's September 2, 2016 Order granting *in part* Walker's motion to suppress, this traffic stop ultimately resulted in an unlawful search that failed to turn up any drugs, but nonetheless yielded substantial evidence of a coordinated identity theft and counterfeiting operation: specifically, 114 blank ID cards; 49 blank check sheets; 45 holographic overlays; a power inverter; a printer; scissors; tape; an iron; seven white envelopes with names and social security numbers written on them; multiple computer devices; a Garmin GPS device; "newly purchased items"; and $95,019 cash. (*Id.* at pp. 5-6).

James, Glenn, and Walker were arrested on the spot and charged by Louisiana authorities with identity theft. Later, the State turned the prosecution over to federal authorities. On October 1, 2015, this District's grand jury indicted James, Glenn, and Walker for unauthorized access device fraud, in violation of 18 U.S.C. § 1029(a)(3). (Doc. 1). On October 29, 2015, the Government obtained a Superseding Indictment, adding counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and conspiracy to make and pass counterfeit checks, to produce fraudulent identification documents, and to use unauthorized access devices, in violation of 18 U.S.C. § 371. (Doc. 13).

In June 2016, James, Glenn, and Walker moved to suppress the evidence seized during the September 2 traffic stop, arguing that the initial stop, its

2

subsequent duration, and the search of the Chrysler were each unlawful. (Doc. 130 at p. 6). After an evidentiary hearing, this Court ruled that the stop itself *and* its subsequent duration passed constitutional muster. (*Id.* at pp. 8-16). Further, the Court ruled that James and Glenn lacked standing to challenge the search of the Chrysler, because they were not named in the rental car agreement and thus lacked any possessory interest in the rental. (*Id.* at pp. 24-25). As to Walker, however, the Court ruled that the warrantless search was unlawful because it was conducted without valid consent and without probable cause. (*Id.* at pp. 17-24). As a result, the Court suppressed all evidence recovered from the Chrysler as to Walker, and as to Walker *only*. (*Id.* at p. 25). The Government immediately appealed, and the U.S. Court of Appeals for the Fifth Circuit affirmed this Court's ruling in all respects. *United States v. Walker*, 706 F. App'x 152 (5th Cir. 2017).

Upon return from appeal, on the Government's motion, the Court dismissed all charges against Walker. (Docs. 159, 160). But the proceedings against James and Glenn continued. On December 11, 2017, on the eve of trial, James pleaded guilty to all Counts set forth in the Superseding Indictment, pursuant to a signed plea agreement wherein he expressly admitted his involvement in a conspiracy "to make and pass counterfeit checks, to produce fraudulent identification documents, and to use unauthorized access devices." (Doc. 221 at p. 6; *see also* Doc. 227).[1] James further

---

[1] Glenn, by contrast, proceeded to trial. (Docs. 234, 235, 236). The result, however, was the same: guilty on all counts. (Doc. 232).

3

stipulated:

> The conspiracy was carried out in the following manner. The conspirators produced counterfeit checks purporting to be actual financial instruments issued by States and organizations whose activities affected interstate commerce. The counterfeit checks were made payable to individuals whose identities had been stolen. The conspirators produced fraudulent driver's licenses and identification cards using a photograph of **JAMES** and the personally identifiable information (PIT) of the individuals to whom the counterfeit checks were made payable. **JAMES** and others used rental cars to travel to various states to cash the counterfeit checks. During the course of the conspiracy, **JAMES** cashed hundreds of counterfeit checks totaling approximately $1 million at Walmart stores in at least 12 states. To cash the checks, **JAMES** used stolen social security numbers (SSNs) and fake IDs.
>
> For example, on March 21, 2014, **JAMES** used a stolen SSN to cash a counterfeit check in the amount of $5,983 payable to J.M. at a Walmart store in Port Allen, Louisiana. Walmart has located dozens of surveillance photographs and videos depicting **JAMES** cashing counterfeit checks or documenting **JAMES's** presence at a Walmart at the time when a counterfeit check was cashed.
>
> On September 2, 2014, the rental car occupied by **JAMES,** Walter Glenn, and Larry Walker was stopped for a traffic violation in the Middle District of Louisiana. During a consensual search of the car, officers found blank check stock, blank ID cards, over $95,000 in cash, and other evidence of a counterfeit check scheme. **JAMES,** Glenn, and Walker were arrested.
>
> Forensic examination of a computer and thumb drive seized from the car revealed check-making software, ID card templates, "The Ultimate Fake ID Guide 2011 Version 8," photographs of checks, signature images, hundreds of SSNs and bank routing and account numbers.
>
> Walmart's check processor discovered that 39 counterfeit checks purportedly drawn on a Texas Builders Foundation (TBF) account at a U.S. Bank and signed by Jared Angaza were cashed at Walmarts in southeastern Texas between August 26, 2014 and September 2, 2014, the day of the traffic stop. A similar check and images of the TBF logo, the U.S. Bank logo, and the Angaza signature were located on the seized thumb drive. Analysis of data extracted from the Garmin GPS device

> seized from the car revealed that at or near the time when each counterfeit check was cashed, the device was located at or near the Walmart which cashed the check.
>
> The fifteen SSNs listed in the Superseding Indictment were found on the thumb drive, belonged to real people, and were among those used to cash the 39 counterfeit TBF checks.

(Doc. 221 at pp. 6-7). At his rearraignment, James again admitted to the same facts, this time under oath. (Doc. 281 at pp. 43-47).

Equally important for present purposes, at his rearraignment James also expressly affirmed: (1) he understood the charges against him; (2) he understood all elements of the charged offenses; (3) he was pleading guilty to the alleged offenses because he was guilty in fact; (4) his plea was knowing, willing, and not the result of any threats or coercion; and (5) he was satisfied with the "advice and services" of his court-appointed attorney. (*Id.* at pp. 10-17, 30-31, 47-48). Ultimately, the Court accepted James's plea, determining that it was knowing, voluntarily, and supported by a factual basis establishing "all of the elements of the crimes charged in the Superseding Indictment." (*Id.* at p. 48).

On February 23, 2018, the U.S. Probation Office issued its pre-sentence investigation report (PSR), setting forth that James faced a Guidelines-range term of imprisonment of 110 to 137 months, based on a total offense level of 28 and a criminal history category of IV. (Doc. 246 at ¶ 89). Thereafter, James moved to withdraw his plea, asserting that he was "'misinformed' and/or 'misled'" by his counsel. (Doc. 263-1 at ¶ 5; *see also* Doc. 277). The Court appointed new counsel to represent James, and

5

ultimately denied his motion to withdraw his plea, determining that James's *post hoc* allegations against his original attorney were conclusory and insufficient to overcome his sworn representations at his rearraignment hearing, which established that his plea was knowing, voluntary, and based in fact. (Doc. 289).

On June 13, 2018, the Court sentenced James to 88 months imprisonment—22 months below the bottom of his Guidelines range—citing James's "long-term drug addiction" and relative role in the scheme (compared to Glenn), followed by 3 years supervised release. (Doc. 297 at pp. 2-3).[2] On direct appeal, James, through court-appointed counsel, challenged only the legality of the September 2 search. The Fifth Circuit affirmed James's conviction and sentence on May 24, 2019. (Doc. 334). On October 7, 2019, the U.S. Supreme Court denied review. (Doc. 336).

On April 14, 2021, James was released from BOP custody and commenced his term of supervised release. (*See* Doc. 343). Prior to his release, however, he timely filed the instant *pro se* **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 340)**. Liberally construed, James's petition asserts four claims: (1) he is "factually innocent of conspiring to make and pass counterfeit checks and conspiring to produce fraudulent identification documents," (Doc. 340-1 at ¶ 6); (2) his plea was not voluntary due to counsel having failed to advise him regarding the "knowledge" element of his offenses;

---

[2] By comparison, the Court sentenced Glenn to 120 months imprisonment. (Doc. 290 at pp. 2-3). The Fifth Circuit affirmed Glenn's conviction and sentence on July 26, 2019. (Doc. 335).

6

(3) trial counsel was ineffective for "advising and assisting [him] to plead guilty to crimes that … [he] did not 'knowingly' commit"; and, in turn, (4) appellate counsel was ineffective for failing to "raise this issue" on appeal. (Doc. 340 at pp. 4-5; Doc. 340-1). In support, James submits an affidavit which, in sum and substance, reiterates that he is not guilty of any of the offenses to which he pleaded guilty, and would not have entered his plea "[h]ad counsel … not advised, urged, and assisted me into pleading guilty to crimes I did not commit." (Doc. 340-1 at ¶ 6). The Government opposes James's petition. (Doc. 342). A hearing on this matter is not necessary.

## II. LAW AND ANALYSIS

### A. Standard

Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Specifically, the statute sets forth four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing." 28 U.S.C. § 2255(b).

7

A defendant seeking relief under Section 2255 must plead sufficient facts to establish a prima facie case of a constitutional violation. *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989). "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 288 n.3.

Finally, and importantly, the defendant must show "actual prejudice" resulting from a constitutional violation in order to warrant relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "Actual prejudice" occurs when the constitutional error "had substantial and injurious effect or influence" on the outcome of the proceeding. *See id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### B. Discussion

#### 1. Actual Innocence

In his affidavit, James insists that he is "factually innocent of conspiring to make and pass counterfeit checks and conspiring to produce fraudulent identification documents." (Doc. 340-1 at ¶ 6). This assertion does *not* appear in James's petition, but will nonetheless be treated as a "claim" under the liberal pleading standards applicable to *pro se* litigants. *See United States v. Valles*, 2023 WL 248889, at *2 (5th Cir. 2023). Regardless, this "claim" fails on the merits because "[t]he Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *see Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). Instead, "a credible showing of actual innocence" merely opens the door to merits review of a separate, procedurally

8

defaulted constitutional claim. *See Floyd v. Vannoy*, 894 F.3d 143, 154 (5th Cir. 2018) (quotation marks omitted). Here, there is no procedural default barring this Court's review of James's underlying constitutional claims.

### 2. Involuntary Plea

Liberally construed, James also complains that his guilty plea was not voluntary because he "pleaded guilty to crimes that … I did not 'knowingly' commit." (Doc. 340 at p. 4). This claim is difficult to discern. If James means that his plea was involuntary because he did not know he was breaking federal law when he committed his offenses, then his claim is an obvious nonstarter. Mere "ignorance" that he was engaging in illegal conduct "is no excuse" for James's crimes. *See United States v. Trevino*, 989 F.3d 402, 405 (5th Cir. 2021) (quoting *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019)).

If, alternatively, James means that he was not aware of the scienter[3] elements of the offenses to which he pleaded guilty, this argument also fails because at the rearraignment hearing the Court expressly advised James regarding what "knowledge" the Government must prove to obtain convictions, as to *each* offense. The Court instructed James that to be convicted of conspiracy under 18 U.S.C. § 371, the Government would be required to prove beyond a reasonable doubt that James *agreed* to pass counterfeit checks, produce fraudulent identification documents, or use

---

[3] "Scienter" is simply the "degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." SCIENTER, Black's Law Dictionary (11th ed. 2019).

9

unauthorized access devices; that James "*knew* the unlawful purpose of the agreement"; and that James (or a co-conspirator) "*knowingly* committed at least one overt act" in furtherance of the conspiracy. (Doc. 281 at p. 10). The Court further advised that to be convicted of unauthorized access device fraud under 18 U.S.C. § 1029(a)(3), the Government would be required to prove that James "*knowingly* possessed 15 or more [counterfeit] access devices"; and that James "possessed those devices with the *intent* to defraud." (*Id.* at p. 14). Finally, the Court advised James that to be convicted of aggravated identity theft under 18 U.S.C. § 1028(A), the Government would be required to prove that James "*knowingly* possessed a means of identification of another person"; and that James "*knew* that the means of identification belonged to another person and not a fictitious person." (*Id.* at p. 16). In each instance, James affirmed that he understood these elements (and all other elements required for conviction). (*See id.* at pp. 10-17).

In sum, James plainly confirmed his understanding of the scienter elements of each of the charged offenses prior to entering his plea. Whatever James's current misgivings, they are not enough to overcome his sworn statements at his rearraignment hearing. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). James's challenge to the sufficiency of his plea fails. *See United States v. Canales*, 460 F. App'x 347, 348 (5th Cir. 2012) (rejecting defendant's claim that his plea was not knowing and voluntary where it was contradicted by "sworn statements at rearraignment") (citing

10

*United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir.2001)).

### 3. Ineffective Assistance Of Counsel

James's ineffective assistance of counsel claims are closely tied to his involuntary plea claim. He asserts that "defense counsel rendered constitutionally ineffective assistance during the plea stage of the proceedings by erroneously advising and assisting me to plead guilty to crimes that counsel was aware I did not 'knowingly' commit," and, further, that counsel was ineffective at the appeal stage by failing to "raise this issue on direct appeal." (Doc. 340 at pp. 4-5).

The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001). To determine whether this right was denied, the Court employs the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense—*i.e.*, "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must be highly deferential. When evaluating the first *Strickland* criterion, we must

> indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quotation marks and citations omitted).

Here, again, it is not entirely clear what to make of James's claim that trial counsel was ineffective for allowing him "to plead guilty to crimes that … [he] did not 'knowingly' commit." If James means that counsel was ineffective for having failed to inform him of the scienter elements of the charged offenses *before* his rearraignment hearing, then he cannot show prejudice because, as set forth above, he expressly confirmed his understanding of these elements *at the hearing* (prior to entering his plea), after being thoroughly instructed by the Court. *See, e.g.*, *United States v. Strother*, 977 F.3d 438, 445-46 (5th Cir. 2020) (rejecting defendant's claim that plea was involuntary based on counsel's failure to accurately apprise him of the "knowledge" element of his firearm offense where at rearraignment defendant "repeatedly affirmed that he knew that he was in possession of the firearm at the time of his arrest and that he understood the 'knowingly possessed' element of his charge"). If, on the other hand, James means that counsel was ineffective for failing to investigate and determine whether a factual basis supported his plea, then, again, he cannot show prejudice because his own sworn admissions establish a factual basis that was sufficient to support each element of the charged offenses. *See id.* In any

12

event, James's ineffective assistance of trial counsel claim fails.

By extension, James suffered no prejudice as a result of appellate counsel's failure to "raise th[e] issue" that he "was erroneously adviced [sic] to plead guilty to crimes that [he] did not 'knowingly' commit." (Doc. 340 at p. 5). As set forth above, given James's sworn representations and admissions at the rearraignment hearing, there is simply no merit to James's suggestion that he lacked sufficient information to enter a knowing and voluntary plea, *or* that his plea lacked a sufficient factual basis. Thus, any challenge to the sufficiency of his plea on appeal would have been frivolous. "Failure to raise meritless objections [on appeal] is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see, e.g., Penson v. Ohio*, 488 U.S. 75, 83–84, (1988) (appellate counsel need not make frivolous arguments); *Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) (where omitted claim lacks merit, ineffective assistance of counsel claim based on failure to raise claim on appeal also lacks merit); *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (same).

### C. Certificate Of Appealability

Reasonable jurists would not debate the denial of James's petition, or the correctness of the Court's substantive rulings that James has failed to make a substantial showing of the denial of a constitutional right. Accordingly, James will be denied a certificate of appealability. *See United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).

13

### III.   CONCLUSION

James has failed to show that he is entitled to relief.  Accordingly,

**IT IS ORDERED** that James's **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 340)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and is hereby **DENIED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that James's related action No. 3:20-cv-00527-BAJ be and is hereby **TERMINATED** and **CLOSED** consistent with the denial of relief set forth herein.

Baton Rouge, Louisiana, this 26th day of April, 2023.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**